*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-TX-675

SMART AZIKEN, APPELLANT,

FILED 09/20/2018
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CVT-11389-13)

(Hon. John M. Campbell, Motions Judge)

(Argued April 5, 2018                    Decided September 20, 2018)

*Richard D. Caldwell*, with whom *Patrick C. Horrell* was on the brief, for appellant.

*Mary L. Wilson*, Senior Assistant Attorney General, Office of the Solicitor General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, and *Todd S. Kim*, Solicitor General at the time the brief was filed, and *Loren L. AliKhan*, Deputy Solicitor General at the time the brief was filed, were on the brief, for appellee.

Before EASTERLY and MCLEESE, *Associate Judges*, and RUIZ, *Senior Judge*.

RUIZ, *Senior Judge*: Appellant Smart Aziken refinanced a mortgage on a property deeded to his sole proprietorship and, as a condition to obtain the loan, was required to transfer the property to a limited liability company ("LLC").

Appellant paid transfer and recordation taxes to record the transfer, but claims he is entitled to a refund of those taxes pursuant to an exemption for certain conversions from one form of business entity to another. Appellant argues that the trial court erred in its interpretation of the exemption statutes when it held that "no conversion was effectuated under the law covering tax exemptions," because, appellant claims, he met all the statutory criteria to be eligible for the tax exemption. Appellant also argues that the trial court erred in granting summary judgment for the District because it used an incorrect standard to evaluate the motion and, if the correct standard had been applied, appellant could have "ma[d]e out, at the least, a *prima facie* case for an estoppel argument." We affirm.

## I. Background[1]

Appellant purchased the real property in 2002 for $505,000 and recorded the deed in the name of Smart E. Aziken T/A Friendship Limousine Transportation Service, his sole proprietorship. Ten years later, in order to refinance a mortgage on the property, the bank required that the property be owned by an incorporated entity to insulate it from appellant's personal liabilities. Appellant filed articles of

---

[1] The facts set out in this section are based on appellant's complaint and motion for summary judgment supported by affidavits. There has been no trial or fact finding.

incorporation for his LLC on July 6, 2012, and he attempted to obtain a Conversion Certificate from the D.C. Department of Consumer and Regulatory Affairs ("DCRA") in August of 2012, that would permit appellant to claim eligibility for a tax exemption at the Office of Tax and Revenue ("OTR"), but the Conversion Certificate was not issued.[2]

To obtain the refinancing, appellant transferred the property to the LLC on September 19, 2012, by means of a "No Consideration Deed." In total, appellant was required to pay $59,225.26 in transfer and recordation taxes in connection with the deed. Still trying to obtain the Conversion Certificate, appellant attended a workshop with DCRA's Corporations Division, where Mr. Josef Gasimov, the Assistant Superintendent of Corporations, informed appellant that he would have to dissolve his LLC and reestablish it to receive the Conversion Certificate, which appellant claimed Gasimov said "should have been issued at the time that the articles of organization were filed . . . ." As instructed, appellant dissolved the LLC and created a new one on October 19, 2012, and a Conversion Certificate was issued the same day. Appellant applied for a refund of the transfer and recordation

_____

[2] Because appellant had not received the Conversion Certificate, he continued to postpone the closing date for the financing, which he claims resulted in additional charges for "substantial fees and interest." Appellant does not indicate the amount of the "substantial fees and interest," nor did he seek to recoup those costs in his suit against the District.

taxes, claiming the transfer was exempt; however, his request for a refund was denied by OTR on the ground that the Conversion Certificate was issued "one month after the 'No Consideration Deed' had been recorded."

Appellant sued the District of Columbia on December 7, 2012, claiming that the transfer of the property to the LLC was eligible for an exemption from transfer and recordation taxes and asserting estoppel against the District. The District filed a motion to dismiss for failure to state a claim and appellant filed a motion for summary judgment. After a hearing, the motions judge, the Honorable John Campbell, treated the District's Motion to Dismiss as a motion for summary judgment and granted summary judgment for the District.

## II. Standard of Review

Interpretation of statutes presents a question of law that we consider *de novo*. *See Cherry v. District of Columbia*, 164 A.3d 922, 925 (D.C. 2017). This court also reviews a grant of summary judgment *de novo*, applying the same standard as the trial court in considering the motion for summary judgment. *See District of Columbia v. District of Columbia Pub. Serv. Comm'n*, 963 A.2d 1144, 1155 (D.C. 2009). A party is entitled to summary judgment if, when the facts are viewed "in

the light most favorable to the non-moving party . . . there [are] no genuine issue[s] of material fact and [] the moving party is entitled to judgment as a matter of law." Super. Ct. Civ. R. 56 (c); *Hosp. Temps Corp. v. District of Columbia*, 926 A.2d 131, 134 (D.C. 2007). On appeal, this court is required to "conduct an independent review of the record . . . [to] determine whether any relevant factual issues exist by examining and taking into account the pleadings, depositions, and admissions along with any affidavits on file, construing such material in the light most favorable to the party opposing the motion." *District of Columbia v. District of Columbia Pub. Serv. Comm'n*, 963 A.2d at 1155 (quoting *Graff v. Malawer*, 592 A.2d 1038, 1040 (D.C. 1991)). Decisions of the tax division of D.C. Superior Court are considered under the same standard of review as appeals from the court's other civil divisions. *Hosp. Temps Corp.*, 926 A.2d at 134; *Square 345 Ltd. P'ship v. District of Columbia*, 927 A.2d 1020, 1023-24 (D.C. 2007) (stating that summary judgment principles apply equally in tax cases).

## III. Discussion

### A. Statutory Interpretation

Generally, when a deed is filed in the District of Columbia, the parties to the deed must pay transfer and recordation taxes. D.C. Code §§ 47-903 (a)(1) & (c)

(2012 Repl.) (transfer tax), 42-1103 (a)(1) & (c) (2012 Repl.) (recordation tax). There are enumerated exceptions to these taxes. *See* D.C. Code §§ 47-902, 42-1102 (2012 Repl.). In 2011, the District adopted an exemption that applies when a property transfer is made "in connection with the conversion of a converting entity to a converted entity." D.C. Code §§ 29-204.06 (h) (2013 Supp.), 42-1102 (22)(A), and 47-902 (16)(A) (2013 Supp.).[3] This recent exemption is part of a broad recodification of the law pertaining to business organization that included a subchapter, the "Entity Transactions Act of 2010," D.C. Code § 29-201.01 et seq. (2012 Repl.), and is based on the Model Entity Transactions Act ("META"). D.C. Council, Committee on Public Services and Consumer Affairs, Report on Bill No.

---

[3] There are several conditions that the conversion must meet to qualify for the tax exemption:

> (A) The interest holders of the converted entity are identical to the interest holders of the converting entity;
> (B) Each interest holder's allocation of the profits and losses of the converted entity is identical to the interest holder's allocation of the profits and losses of the converting entity; and
> (C) There is no change in the interest holders of the converted entity or in the allocation to any interest holder in the profits and losses of the converted entity during the 12-month period following the effective date of the conversion, other than by reason of the death of an interest holder or the involuntary dissolution of the converted entity.

D.C. Code § 29-204.06 (h)(2) (2013 Supp.).

18-500, District of Columbia Code Title 29 (Business Organizations) Enactment Act of 2010 at 9-10, 19 (Dec. 2, 2010).

The Act defines a "conversion" as involving a domestic or foreign "entity." D.C. Code §§ 29-201.02 (defining "conversion"), -204.01 (authorizing certain conversions by domestic entities). As defined in D.C. law, "[t]he term 'entity' does not include [] [a]n individual." D.C. Code § 29-101.02 (10)(B)(i) (2012 Repl.). The commentary to the META makes clear that "[s]ubparagraph (B)(i) of this definition [defining the term "entity"] excludes a sole proprietorship from the concept of an 'entity.'" NAT'L CONF. OF COMM'R ON UNIFORM STATE LAWS, 6A UNIFORM LAWS ANNOTATED 15 (2016). This is because in a sole proprietorship an individual owns the business assets directly, rather than through a partnership or corporation. "The sole proprietorship form of business provides 'complete identity of the business entity with the proprietor himself,'" and "has no legal existence apart from its owner." *Bushey v. N. Assur. Co. of Am.*, 766 A.2d 598, 603 (Md. 2001) (quoting 1 Z. Cavitch, *Business Organizations* § 1.04[1], at 1-23 (Matthew Bender 2000)).[4] Thus, the plain meaning of the statute's language is clear that a

_____

[4] *See also Ladd v. Scudder Kemper Inv., Inc.*, 741 N.E.2d 47, 49 (Mass. 2001) ("The term 'sole proprietor' refers to a single individual who owns a business."); West's Tax Law Dictionary § S2380 (Robert Sellers Smith & Adele Turgeon Smith eds., 2018) (defining "Sole Proprietorship" as a "[b]usiness owned

(continued . . .)

sole proprietorship, being equivalent to the individual owner, is not an "entity" that can transfer or receive property without having to pay recordation and transfer taxes.

Appellant nonetheless asks this court to interpret the tax exemption at issue to include transfer of a property as part of the change of his sole proprietorship into a single-member LLC, arguing that: (1) he met "all of the requirements listed on the *Affidavit of Transfer Pursuant to Entity Conversion*,"[5] (2) to interpret the term "entity" as excluding sole proprietorships is at odds with the District's "characterization of a Sole Proprietorship as a corporate form,"[6] and (3) the type of

_____

(. . . continued)
by one person and does not include a corporation, partnership or trust. A sole proprietor is liable for all the debts of the business.").

[5] These are requirements set out in the statute. See *supra* note 3.

[6] Appellant cites no statutory or case authority for this characterization. Instead, he submitted an excerpt from the DCRA website that lists a variety of forms of business organization (sole proprietorships, general and limited partnerships, limited liability partnerships, general and S corporations, and limited liability companies) under the rubric "Choose a Corporate Structure." Notably, the website advises that DCRA "can provide general information on each structure but strongly suggests you contact an attorney and/or an accountant before making a final decision on what structure best suits your business needs." With respect to sole proprietorships, it notes that a disadvantage is "difficulty obtaining long-term financing." https://dcra.dc.gov/service/choose-corporate-structure (July 8, 2014).

conversion he completed "d[id] not violate the spirit of the law." These arguments run counter to the statutory language and are unsupported by the legislative history.

When the plain language of a statute is "unambiguous" and "does not produce an absurd result" that language dictates how a court interprets the statute. *District of Columbia v. Brookstowne Cmty. Dev. Co.*, 987 A.2d 442, 447 (D.C. 2010); *Jackson v. District of Columbia Bd. of Elections & Ethics*, 999 A.2d 89, 101 (D.C. 2010) ("The words used in a statute are the primary, and ordinarily the most reliable, source of interpreting the meaning of the statute." (internal quotation marks omitted)). Tax exemptions, in particular, "will never be implied" in a statute, but instead, must be "expressed in clear and unmistakable terms, or must appear by necessary implication from the language used." *District of Columbia Office of Tax & Revenue v. BAE Sys. Enter. Sys., Inc.* ("*BAE*"), 56 A.3d 477, 484 (D.C. 2012) (noting that tax exemptions are "construed strictly against the claiming party"). If the statute is ambiguous, secondary sources will be consulted. *See id.* at 485 (consulting legislative history for the purpose behind ambiguous tax statute); *Brookstowne*, 987 A.2d at 448-49.

Here, no express language in the statute exempts appellant's transfer from an individual to a limited liability company and none has to be implied by way of

necessity. To the contrary, as already discussed, the statutory language and commentary to the model law, after which it was drafted, are clear that a "converting entity" does not include an individual/sole proprietorship.

The legislative history, even if it were necessary to resolve an ambiguity in the statutory language, does not support appellant's argument. Appellant does not point the court to any mention made of sole proprietorships in the committee report or in any subsequent amendments to the statute, and we have found none. *See* D.C. Council, Committee on Consumer and Regulatory Affairs, Report on Bill No. 10-277 (Feb. 22, 1994); D.C. Council, Committee on Public Services and Consumer Affairs, Report on Bill No. 18-500, District of Columbia Code Title 29 (Business Organizations) Enactment Act of 2010 at 4-5, 19-20 (Dec. 2, 2010); D.C. Council, Committee on Public Services and Consumer Affairs, Report on Bill No. 19-532, District of Columbia Title 29 Technical and Harmonizing Amendments Act of 2012 at 6-7, 32 (June 22, 2012).

Appellant argues that he complied with the "spirit of the law," because the transfer he effectuated comports with the purpose of the exemption. Whatever the merits of his position, it amounts to a plea that the court overlook the clear statutory language and come to our own determination of what the exemption

should cover. This is a matter of legislative policy, not one of judicial interpretation.[7]

## B. Equitable Estoppel

Our conclusion that the statutory exemption does not apply to a transfer of property from a sole proprietorship to an LLC is dispositive of appellant's estoppel claim.[8] We begin by noting that estoppel, when asserted against "the public . . . . should not be invoked except in rare and unusual, or exceptional, circumstances." *District of Columbia Office of Tax & Revenue v. Exxonmobil Oil Corp.*, 141 A.3d

_____

[7] We are unpersuaded by appellant's argument that his circumstance is no different than "a partnership giving to an LLC." Unlike sole proprietorships, partnerships (general and limited) are expressly included in the definition of "entity." D.C. Code § 29-101.02 (10)(A)(iii) and (iv). The D.C. Code defines a partnership as "an entity distinct from its partners," D.C. Code § 29-602.01 (a) (2012 Repl.), in contradistinction to the complete overlap in identity between a sole proprietorship and its individual owner, who is expressly excluded from the definition of "entity."

[8] The trial court dismissed this argument, finding that: (1) appellant could not show a promise was made because the District employees only provided him general information regarding the process and made no specific promise; (2) even if the District's agents did make a promise, it was unreasonable for appellant to rely on it because they "plainly lack the authority to grant such a refund"; and (3) appellant did not allege any "affirmative misconduct" on the part of any District employee. As discussed in the text, we reject appellant's estoppel claim as a matter of law and need not address the trial court's other stated reasons or appellant's argument that the trial court misapplied the standard for summary judgment.

1088, 1092 (D.C. 2016) (internal quotation marks omitted). Our case law establishes that estoppel claims against the District must meet four elements: (1) a promise made, (2) reasonable reliance on that promise, (3) an injury caused by breach of the promise, and (4) a showing that enforcement of the promise would be in the public interest and would prevent injustice. *Brookstowne*, 987 A.2d at 450. Appellant's estoppel claim founders on the second element because claimants are imputed with knowledge of the scope of an agency's authority. Thus, as a matter of law, it is not reasonable to rely on a promise by an agent who "plainly lacks the authority to do whatever he has promised." *Id.* (noting that reliance was unreasonable where statute "clearly provides that only the three enumerated categories of [] entities are eligible"). As estoppel against the District is limited to circumstances where the equities are strongly in favor of the party seeking to invoke it *and* in which the agency has the authority to act, *District of Columbia v. Stewart*, 278 A.2d 117, 119 (D.C. 1971); *Coffin v. District of Columbia*, 320 A.2d 301, 305-06 (D.C. 1974), appellant could not succeed on a claim of estoppel.

Appellant alleges that his reliance on the promised refund was reasonable because the statements were made by agents of the Office of Tax and Revenue, experts on the matter of tax exemptions who acted "within the purview of their actual authority." We disagree. Actual authority denotes that the agent has lawful

authority to complete the action, *see Perkins v. District of Columbia*, 146 A.3d 80, 85 (D.C. 2016), in this case, to effect a refund because the taxes collected were not due. This argument fails to consider the statute imposed requirements that District employees had the obligation to apply, and did not authorize a discretionary refund.

We conclude that D.C. law clearly provides that the transfer effectuated by appellant from himself to an LLC did not come within the exemption from applicable transfer and recordation taxes, and that appellant therefore cannot demonstrate that any reliance on his part to a contrary understanding was reasonable, such that the government should be estopped from denying his claim for a refund. The grant of summary judgment to appellee is

*Affirmed.*