MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME 94
Docket:       Yor-19-412
Submitted
  On Briefs:  May 4, 2020
Decided:      June 30, 2020

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

DEBBIE H. SILVERWOLF

v.

KATHRYN E. COLTON et al.

HUMPHREY, J.

[¶1]   Kathryn E. Colton appeals from judgment of the District Court finding her in contempt and imposing a five-day jail sentence (Biddeford, *Sutton, J.*) and ordering her incarceration (*Foster, J.*) in an action for recovery of personal property.  *See* 14 M.R.S. § 7071 (2020); M.R. Civ. P. 66(d).  We vacate the judgment in part.

## I.  BACKGROUND

[¶2]  Colton breeds Samoyed dogs.  Debbie H. Silverwolf was formerly a tenant on Colton's property.  In February 2019, Colton transferred possession of a certain Samoyed dog, named Kismet's Green Mountain Flurrie (Flurrie), to Christa Davis, another Samoyed breeder who lives in New Hampshire.  In March 2019, Silverwolf brought an action against Colton for recovery of

2

personal property, 14 M.R.S. § 7071, alleging that she is Flurrie's lawful owner and seeking the dog's return.[1]

[¶3] After a hearing on April 5, 2019, the court (*Tice, J.*) entered judgment in favor of Silverwolf and ordered Colton to return the dog. The court's order required Colton to bring Flurrie to Silverwolf at a neutral location on April 13, 2019. Colton did not appeal that judgment, but failed to return Flurrie. Silverwolf then filed a motion for contempt. *See* 14 M.R.S. § 7071(7); M.R. App. P. 66(d). Colton was served with a writ of possession and a contempt subpoena in July 2019.

[¶4] On August 9, 2019, another judge (*Sutton, J.*) held a hearing on the contempt motion at which both Silverwolf and Colton were present. After hearing from both parties, the court found by clear and convincing evidence that Colton had not returned Flurrie, in violation of the April 5, 2019, order, and that she had the present ability to do so even though the dog was in Davis's possession. The court granted the contempt motion and from the bench ordered Colton to serve five days in jail "consistent with an order that I will write today," but stayed execution of the sentence until August 23, 2019, when

---

[1] Although Richard Colton is a party to the underlying action, Silverwolf's motion for contempt named only Kathryn Colton. Therefore, only Kathryn Colton was held in contempt and Richard Colton is not involved in this appeal.

the parties were to return to court to give Colton "an opportunity to show cause . . . as to why [she] cannot or will not or can't cooperate with Christa Davis for the return of the dog." The court then concluded by saying that Colton had a "sufficient relationship with Ms. Davis" that she would "be able to collaborate with [her]" to return the dog, and if Colton did not, the court stated, "you'll have the opportunity to show cause and if you don't show cause, you'll go to jail." That same day, the court issued its written order, which included the five-day sentence and stay, and also provided that

> [Colton] may purge herself of her contempt and avoid incarceration if she returns the [dog] . . . and if [Colton] cooperates fully with [Silverwolf] in any hearing set in New Hampshire on August 15, 2019 involving Christa Davis regarding return of the dog.

The written order made no mention of a show cause proceeding.[2]

[¶5] On August 23, 2019, a third judge (*Foster, J.*) found that Colton had not returned Flurrie to Silverwolf and summarily issued an order of incarceration pursuant to the contempt order.[3] No "show cause" proceeding was held.

---

[2] Unlike the court's verbal recitation that Colton would have the opportunity to "show cause" as to why she was unable to *cooperate with Christa Davis* for the dog's return, the written order required Colton to *cooperate with Silverwolf* in a New Hampshire case dealing with the return of the dog—and to return the dog—to purge herself of the contempt.

[3] The jail sentence was stayed pending appeal.

4

[¶6]  Colton timely appealed from the court's judgments finding her in contempt and ordering her incarceration.[4]  M.R. App. P. 2B(c).

## II.  DISCUSSION

### A.    The Contempt Finding

[¶7]  Colton argues that the court erred as a matter of law in finding her in contempt and that the court's factual findings are not supported by the evidence.

[¶8]  We review a finding of contempt for an abuse of discretion and the underlying factual findings for clear error.  *Town of Kittery v. Dineen*, 2017 ME 53, ¶ 17, 157 A.3d 788.  A party seeking a contempt order "must establish by clear and convincing evidence that the alleged contemnor failed or refused to comply with a court order and presently has the ability to comply with that order."  *McMahon v. McMahon*, 2019 ME 11, ¶ 9, 200 A.3d 789 (quotation marks omitted).  Even where a person subject to a court order is incapable of full compliance, he or she "must comply to the fullest extent possible, regardless of

---

[4]  Late in the appellate process, we received an order of the trial court, dated June 11, 2020, purporting to grant Silverwolf's post-judgment motion for further findings, presumably pursuant to M.R. Civ. P. 52(b).  The additional findings are not necessary to our consideration of this appeal. Further, although we need not decide whether the court's order is valid, we observe that the post-judgment motion was filed approximately seven months after entry of the latest judgment subject to this appeal.  M.R. Civ. P. 52(b); M.R. App. P. 2B(c)(2), 3(c)(2).

whether such efforts result in compliance in whole or in part." *Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 13, 982 A.2d 339 (quotation marks omitted).

[¶9]  There is no dispute that Colton failed to comply with the April 5, 2019, order requiring her to return Flurrie.  On August 9, 2019, based on sufficient competent evidence in the record, the court found that Colton and Davis have been friends for more than twenty years, speak regularly on the telephone, and visit each other in person.  The court further found that Colton made no effort to retrieve the dog from Davis, and rejected as not credible Colton's testimony that she was incapable of getting the dog from her friend. The court concluded that Colton had the present ability to comply with the order even though the dog was in Davis's possession.

[¶10]  It is well settled that "credibility determinations are left to the sound judgment of the trier of fact." *Dyer v. Superintendent of Ins.*, 2013 ME 61, ¶ 12, 69 A.3d 416.  The court's weighing of the facts and competing testimony was not outside the bounds of reasonableness, and we conclude that the court did not err in finding Colton's testimony incredible and did not abuse its discretion in finding that Colton had the ability to comply with the April 5 order. *See Green Tree Servicing*, *LLC v. Cope*, 2017 ME 68, ¶ 12, 158 A.3d 931 (articulating the abuse of discretion standard).

6

B.      Due Process

[¶11]  Colton next argues that the court abused its discretion by issuing a written judgment that differed from its verbal pronouncement, and violated her right to due process by ordering her to be incarcerated without an opportunity to "show cause" as to whether she cooperated with Davis regarding the return of Flurrie.

[¶12]  We review questions of law, including due process challenges, de novo.  *Dubois v. Dep't of Agric.*, 2018 ME 68, ¶ 8, 185 A.3d 743.  In general, "the Constitution requires notice and an opportunity to be heard before the imposition of contempt sanctions."  *Splude v. Dugan*, 2003 ME 88, ¶ 6, 828 A.2d 772.  However, this rule is flexible, and "the specific type of process due, including notice, varies from case to case to promote the fairness of each particular action."  *Id.* (quotation marks omitted); *see also Dubois*, 2018 ME 68, ¶ 9, 185 A.3d 743.

[¶13]  Colton does not dispute that she was provided notice of the hearing on August 9, 2019, and was given a full opportunity to be heard at that hearing before the court made its contempt finding.  *See Splude*, 2003 ME 88, ¶ 6, 828 A.2d 772.  Rather, Colton argues that she was denied the opportunity on August 23, 2019, to "show cause" before being ordered to jail.

[¶14]  Complicating matters, the court on August 9, 2019, following its verbal ruling, stated that its final judgment would be delivered in writing,[5] but the written order did not include any "show cause" language and stated only that (1) the sentence was stayed until August 23, 2019, and (2) Colton could "purge herself of her contempt and avoid incarceration" by returning Flurrie *and* by "cooperat[ing] fully with [Silverwolf] in any hearing set in New Hampshire on August 15, 2019 involving Christa Davis regarding the return of the dog."[6]

[¶15]  It is clear that the second judge did not intend either her verbal or written rulings on August 9, 2019, to provide Colton a second opportunity to be heard on August 23, 2019, as to whether she violated the court's April 5, 2019, order.  The court found Colton in contempt on August 9, 2019, after a full hearing.  However, the variations in those rulings, particularly as to the conditions for purging the contempt, made less clear what was to happen on August 23, 2019.

---

[5]  The court stated, "The following things will happen, consistent with an order that I will write today to make it clear so that you'll have a written copy of my order.  It will be sent to you next week, but you'll know today what my decision is."

[6]  The docket entry states that "execution is stayed until August 23 and [Colton] may purge herself and avoid incarceration if she returns the dog," but includes no mention of a "show cause" proceeding or the New Hampshire hearing.

8

[¶16]  At the August 23, 2019, hearing, the court (*Foster, J.*) determined that the dog had not been returned and, informed only by the written order, summarily ordered Colton's incarceration.   Then, the following exchange occurred:

> MS. COLTON:  May I make a statement, Your Honor?
>
> THE COURT:  You can make a statement but the—the issue is the dog was to be returned—
>
> MS. COLTON:  Mm-hmm.
>
> THE COURT:  —and has not been returned.
>
> MS. COLTON:  I—I guess I was expecting it would be the same judge and she had asked me some questions that I was honest with her but I—I don't think she believed me.
>
> THE COURT:  She didn't believe you.
>
> MS. COLTON:  No, but I—I have some—some proof.
>
> THE COURT:  We're not going to retry the case.

The result is that Colton was denied the opportunity to "show cause" in some fashion, notwithstanding her attempt to make an offer of proof.[7]

---

[7]  This case highlights the unfortunate consequences that can result when multiple judges, here three, move in and out of an important chain of proceedings and confound an otherwise uncomplicated civil case.  We are mindful of the good work being done by our trial courts dealing with high-volume dockets in the face of severe resource limitations and the resulting need for scheduling gymnastics.  Nevertheless, we caution that the best practice in a civil case likely to have multiple proceedings is that one judge should be assigned to manage all aspects of the case and, in particular, that a judge issuing a contempt order should also preside over any proceeding relating to

[¶17]  Therefore, we vacate the portion of the District Court's judgment ordering Colton's incarceration and remand for the court to hold a "show cause" hearing consistent with the court's verbal pronouncement on August 9, 2019. We affirm the court's contempt finding and its imposition of a five-day jail sentence as a remedial sanction.  M.R. Civ. P. 66(d)(3).

[¶18]  On remand, the judge who issued the contempt order on August 9, 2019, shall preside over the show cause hearing and, because the purpose of a remedial sanction is "to coerce the termination of an ongoing contempt," M.R. Civ. P. 66(a)(2)(C), we order that the hearing shall be scheduled no later than twenty-one days after issuance of our mandate.  M.R. App. P. 14(a)(2).

[¶19]  Finally, we emphasize that our holding is "a narrow one, limited to these extraordinary facts," *Evans v. State*, 2020 ME 36, ¶ 7, --- A.3d ---, and should not be read as requiring a hearing to show cause after entry of a contempt order in every case.

The entry is:

> Judgment vacated in part.  Remanded for a hearing to show cause within twenty-one days after issuance of the mandate before the judge who presided at the contempt hearing.  Mandate to issue immediately.

---

the contemnor's compliance with that order.  *See, e.g., McBride v. Worth*, 2018 ME 54, ¶ 3 n.1, 184 A.3d 14; *MacMahon v. Tinkham*, 2015 ME 9, ¶ 13, 109 A.3d 1141.

Michael J. O'Toole, Esq., Woodman Edmands Danylik Austin Smith & Jacques, P.A., Biddeford, for appellant Kathryn E. Colton

Debbie H. Silverwolf, appellee pro se

Biddeford District Court docket number SA-2019-149
For Clerk Reference Only